**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **LARITA BROWN,**<br><br>               **Plaintiff,**<br><br>     v.<br><br>**INNOVATIVE SYSTEMS GROUP, INC.,**<br><br>               **Defendant.** | **Case No. 06 C 1702**<br><br>**Hon. Harry D. Leinenweber** |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Larita Brown (hereinafter, "Brown") alleges that her employer, Innovative Systems Group, Inc. (hereinafter, "ISG") violated Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 by retaliating against her by firing her for making a complaint alleging that a fellow employee subjecting her to racial harassment.

**I.    FACTUAL BACKGROUND**

ISG is a consulting firm that places information systems consultants with client companies. ISG also occasionally places administrative assistants with clients. ISG is owned by Dan Burns (hereinafter, "Burns"), Joe Salas, and Sonny Salas. Brown was recruited by ISG Technical Recruiter Melissa MacLeod (hereinafter, "MacLeod") in February 2004 for placement as an administrative assistant with Blue Cross Blue Shield (hereinafter, "BC/BS").

During August 2004, Patricia Stewart (hereinafter, "Stewart"), another ISG administrative assistant placed at BC/BS made two

comments to Brown that Brown deemed racially offensive.  Brown told MacLeod about these comments.  On August 30, Stewart handed Brown a piece of paper with a printed joke on it that Brown found racially offensive.  Brown showed the joke to a few BC/BS employees, asking them if she had overreacted.  Brown then took the joke to the BC/BS Compliance Department and spoke to Michael Hussman (hereinafter, "Hussman").  Hussman took Brown to speak to Jim Szczepankski (hereinafter, "Szczpankski"), who prepared an incident report setting forth Brown's complaints against Stewart.  The BC/BS Compliance Department reviewed Stewart's e-mail usage, and flagged several non-work-related e-mails Brown sent to Stewart over a six-month period.  The flagged e-mails were turned over to the BC/BS Human Resources Department.  There were other non-work-related e-mails in Stewart's email.

Tony DeAngelo (hereinafter, "DeAngelo") reviewed the information supplied by Compliance and determined that Brown's and Stewart's placement at BC/BS would be terminated for improper use of the BC/BS e-mail system.  Pursuant to the agreement between ISG and BC/BS, BC/BS has sole discretion to terminate the placement of any ISG employee if the employee's performance or qualifications "do not meet the standards determined by [BC/BS] as necessary or appropriate for the performance of the Services"; ISG must "promptly remove" any employee that BC/BS has so terminated.

Because it was a Friday, Burns was asked to contact Brown and tell her not to return to the BC/BS facility.

Thus, on September 4, 2004, MacLeod called Brown and asked her not to return to BC/BS. During that conversation, Brown asserts that she told MacLeod that she had complained to BC/BS about Stewart's comments and the typewritten joke, that she felt she was being terminated for that reason, and that she planned to call an attorney. MacLeod asserts that Brown told her that she had complained to BC/BS but does not recall if Brown mentioned why she complained. Another ISG employee informed Stewart that her placement at BC/BS was terminated.

MacLeod followed up with Burns and ISG Human Resources Director Debra Prochut (hereinafter, "Prochut") about the call to Brown (it is unclear from the record exactly when this follow-up was made). She told Burns and/or Prochut that Brown was surprised to be terminated by BC/BS because she had filed a claim with BC/BS. Brown never told Burns or anyone at ISG (besides MacLeod) that she had complained to BC/BS regarding Stewart's racial comments. Burns contends that he did not know that Brown had made a complaint of racial discrimination to BC/BS until Brown filed her complaint with the EEOC.

About a week later, Brown spoke to MacLeod to see if ISG had more work for her. Despite looking, MacLeod was not able to find any work available for Brown as an administrative assistant. ISG

terminated Brown's employment; ISG asserts that it terminated Brown because it was unable to find another placement for her while Brown asserts that she was terminated because she complained to BC/BS about Stewart's comments and joke.

## II. **LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©. A fact is material if it could affect the outcome of the suit under the governing law, and a dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view all the evidence and any reasonable inferences therefrom in the light most favorable to the non-moving party. *See Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000).

## III. **DISCUSSION**

### A. **Retaliation**

Brown's Complaint brings two counts of retaliation, one under Title VII and one under 42 U.S.C. § 1981. The *prima facie* case is the same and the claims will be discussed together. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 404 (7th Cir. 2007).

### *1. BC/BS's Decision to Dismiss Brown*

First, ISG argues that it is not responsible for BC/BS's decision to dismiss Brown's placement following her complaint. The parties do not dispute that BC/BS, and not ISG, decided that Brown could not return to her placement with BC/BS (even if this decision was communicated by MacLeod). Brown has not sued BC/BS, and therefore, the alleged impropriety of its decision is irrelevant unless ISG can in some way be held responsible for it. Brown suggests in passing that joint employer theory and/or agency theory might be used to hold ISG responsible.

As ISG suggests, the joint employer theory cannot be used to hold ISG responsible for BC/BS's decision. The joint employer theory is generally used "to obtain jurisdiction over a company that is unrelated to the employer-in-fact but which exercises sufficient day-to-day control over a charging party to be treated as a co-employer of the charging party." *Barbara Lindemann & Paul Grossman, Employment Discrimination Law* 1312 (3d Ed. 1996); *Amarnare v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 611 F.Supp. 344, 349 (S.D.N.Y. 1984); *see generally Flowers v. Columbia College Chicago*, 397 F.3d 532, 534 (7th Cir. 2005). A joint employer theory thus would be used to allow Brown sue BC/BS, who is not Brown's employer-in-fact. Alternatively, a plaintiff may attempt to show that two entities are joint employers under the standard set out by the National Labor Relations Board in *Radio & Television*

*Broadcast Technicians Local Union 1264, International Brotherhood of Electrical Workers, AFL-CIO v. Broadcast Services of Mobile, Inc.*, 380 U.S. 255 (1965). Under this standard, a court evaluates the entities' (a) interrelation of operations, (b) common management, © centralized control of labor relations, and (d) common ownership or financial control. Although Brown argues that joint employer theory is "perhaps" applicable, she fails to cite a single case supporting the application of the theory in order to hold an employer-in-fact responsible for the actions and decisions of a company exercising day-to-day control over the plaintiff. Brown's argument fails to set out or address the *Radio & Television Broadcast* criteria. Instead, Brown argues that because the Seventh Circuit has recognized a joint employer theory, a question of fact is raised as to whether ISG and BC/BS are in fact joint employers, thereby precluding summary judgment. Brown's argument is wrong; it raises an issue of *law* – just the kind of issue that ought to be resolved on summary judgment. Raising a question of law as if it were a rhetorical one (and failing to answer it) is not enough to avoid summary judgment.

Likewise, agency theory cannot be used to hold ISG responsible for BC/BS's decision to dismiss Brown. Under Title VII, an employer includes an employer's agent, so long as that agent is an agent with respect to employment practices. 42 U.S.C. § 2000e; *Konieczny v. Derickson*, 43 Fair Empl. Prac. Cas. (BNA) 251 (S.D. Ill. 1987).

As with the joint employer theory, Brown suggests that there is a genuine issue of fact as to whether BC/BS was the agent of ISG. Again, the existence of an agency relationship is a question of law, not of fact. Furthermore, Brown fails to provide any citation suggesting that BC/BS was indeed ISG's agent. There does not appear to be any evidence in the record that ISG delegated to BC/BS power to review Brown's job performance, determine Brown's compensation as paid by ISG, or to terminate Brown's employment with ISG. Furthermore, the contract between ISG and BC/BS specifically states that the parties are not agents. Thus, this Court will not find ISG responsible for BC/BS' actions via agency theory.

### *2. ISG's Termination of Brown*

Second, ISG argues that summary judgment is appropriate because Brown cannot show retaliation in its decision to terminate her. Title VII makes it unlawful "for an employer to discriminate against any of [its] employees . . . because [s]he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). Retaliation may be proven using either the direct or indirect, burden-shifting method. *Moser v. Indiana Dept. of Corrections*, 406 F.3d 895, 903 (7th Cir. 2005).

Under the direct method, Brown must show (1) she engaged in statutorily protected activity; (2) she suffered an adverse action taken by the employer; and (3) there was a causal connection

between the adverse action and her protected activity. *Id.* Direct or circumstantial evidence may be used to establish retaliation under the direct method of proof. ISG argues that Brown cannot show a causal connection between her complaint and her termination because she cannot show that Burns, who made the decision to terminate Brown's employment with ISG, was aware that she had made a complaint of racial discrimination. This Court agrees. Viewing the record in a light most favorable to Plaintiff, the best that Brown can show is that the decision-maker (Burns and/or Prochot) *might* have known that Brown had made *some kind* of complaint to BC/BS prior to her termination. It is undisputed that MacLeod had no decision-making power. As such, this Court finds that there is no genuine issue of material fact and summary judgment is proper.

To state a *prima facie* claim for retaliation under the indirect method of proof, Brown must show that (1) she engaged in statutorily protected activity; (2) she suffered an adverse action by her employer even though she was performing her job in a satisfactory manner; and (3) other similarly situated employees who did not complain of harassment were not terminated. *Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134, 1146 (7th Cir. 1997). If Brown is able to establish a *prima facie* case, ISG must offer a non-retaliatory reason for her discharge. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981). The burden then

shifts back to Brown to prove ISG's reason is a pretext and the real reason for her discharge was to retaliate. *Id.*

Assuming, *arguendo*, that Brown could make out a *prima facie* case for discrimination, ISG argues that it had a legitimate reason for terminating her – it had no work for her after BC/BS had terminated her placement. Where an employer would have made the same decision regardless of a retaliatory motive, the employer cannot be held liable. *Speedy v. Rexnord Corp.*, 243 F.3d 397 (7th Cir. 2001); *McNutt v. Board of Trustees of University of Illinois*, 141 F.3d 706 (7th Cir. 1988). It is undisputed that ISG placed the bulk of its employees as information technologists and only occasionally had placements for administrative assistants. Furthermore, Brown does not dispute that MacLeod and ISG attempted to find other work for Brown and that none was available. Additionally, ISG terminated Stewart's employment for the same reason – they were unable to find another placement for her.

Brown is unable to prove that ISG's proffered legitimate reason is pretextual. Brown suggests that in order to prevail, she "need only cast doubt" on ISG's proffered reason for terminating her. Brown is mistaken. In order to overcome an employer's proffered legitimate reason and prove pretext, a plaintiff must show that the reason is "a deliberate falsehood." *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006); *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002). Brown does not

shifts back to Brown to prove ISG's reason is a pretext and the real reason for her discharge was to retaliate. *Id.*

Assuming, *arguendo*, that Brown could make out a *prima facie* case for discrimination, ISG argues that it had a legitimate reason for terminating her – it had no work for her after BC/BS had terminated her placement. Where an employer would have made the same decision regardless of a retaliatory motive, the employer cannot be held liable. *Speedy v. Rexnord Corp.*, 243 F.3d 397 (7th Cir. 2001); *McNutt v. Board of Trustees of University of Illinois*, 141 F.3d 706 (7th Cir. 1988). It is undisputed that ISG placed the bulk of its employees as information technologists and only occasionally had placements for administrative assistants. Furthermore, Brown does not dispute that MacLeod and ISG attempted to find other work for Brown and that none was available. Additionally, ISG terminated Stewart's employment for the same reason – they were unable to find another placement for her.

Brown is unable to prove that ISG's proffered legitimate reason is pretextual. Brown suggests that in order to prevail, she "need only cast doubt" on ISG's proffered reason for terminating her. Brown is mistaken. In order to overcome an employer's proffered legitimate reason and prove pretext, a plaintiff must show that the reason is "a deliberate falsehood." *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006); *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002). Brown does not

shifts back to Brown to prove ISG's reason is a pretext and the real reason for her discharge was to retaliate. *Id.*

Assuming, *arguendo*, that Brown could make out a *prima facie* case for discrimination, ISG argues that it had a legitimate reason for terminating her – it had no work for her after BC/BS had terminated her placement. Where an employer would have made the same decision regardless of a retaliatory motive, the employer cannot be held liable. *Speedy v. Rexnord Corp.*, 243 F.3d 397 (7th Cir. 2001); *McNutt v. Board of Trustees of University of Illinois*, 141 F.3d 706 (7th Cir. 1988). It is undisputed that ISG placed the bulk of its employees as information technologists and only occasionally had placements for administrative assistants. Furthermore, Brown does not dispute that MacLeod and ISG attempted to find other work for Brown and that none was available. Additionally, ISG terminated Stewart's employment for the same reason – they were unable to find another placement for her.

Brown is unable to prove that ISG's proffered legitimate reason is pretextual. Brown suggests that in order to prevail, she "need only cast doubt" on ISG's proffered reason for terminating her. Brown is mistaken. In order to overcome an employer's proffered legitimate reason and prove pretext, a plaintiff must show that the reason is "a deliberate falsehood." *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006); *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002). Brown does not

dispute that ISG looked for, and was unable to find, additional work for her as an administrative assistant.  In short, there is genuine dispute of material fact that ISG in fact had a legitimate reason to terminate Brown.

### B. Racial Harassment

ISG's briefs address a potential racial harassment claim, arguing that "to the extent Brown attempts to bring" that claim, it fails for a variety of reasons.  ISG was apparently attempting to cover its bases; the Complaint does not appear to contemplate a racial harassment claim.  Additionally, although Brown contests that her EEOC charge does not include a race claim, she fails to respond to ISG's substantive arguments for summary judgment.  Thus, to the extent that Brown's complaint might have contemplated a racial harassment claim, summary judgment is granted to ISG on that claim.

### IV. CONCLUSION

For the reasons stated herein, the Court grants ISG's Motion for Summary Judgment.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

DATE: 7/26/2007